Misc. No. 2014-____

# United States Court of Appeals
# for the Federal Circuit

IN RE NINTENDO OF AMERICA INC., MICRO ELECTRONICS, INC.,
HASTINGS ENTERTAINMENT, INC., GAMESTOP CORP., BEST BUY
STORES, L.P., BESTBUY.COM, LLC, KMART CORPORATION, TARGET
CORPORATION, AND TOYS "R" US-DELAWARE, INC.,
*Petitioners*.

*On Petition for a Writ of Mandamus to the U.S. District Court for the
Eastern District of Texas in Case No. 2:13-CV-32
Judge Rodney Gilstrap*

## PETITION FOR WRIT OF MANDAMUS

LORI R. MASON
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
(650) 843-5000 (telephone)
(650) 849-7400 (facsimile)

STEPHEN R. SMITH
COOLEY LLP
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000 (telephone)
(703) 456-8100 (facsimile)

*Attorneys for Petitioner Nintendo of America Inc.*

JAY F. UTLEY
BAKER & MCKENZIE LLP
2300 Trammel Crow Center
2001 Ross Avenue
Dallas, TX 75201
(214) 978-3000 (telephone)
(214) 978-3099 (facsimile)

*Attorneys for Petitioners Nintendo of America Inc., Micro Electronics, Inc.,
Hastings Entertainment, Inc., GameStop Corp., Best Buy Stores, L.P.,
BestBuy.com, LLC, Kmart Corporation, Target Corporation, and Toys "R" US-
Delaware, Inc.*

April 11, 2014

## Certificate of Interest for Nintendo of America Inc.

1. The full name of every party represented by me is Nintendo of America Inc.

2. There are no other real parties in interest represented by me.

3. Nintendo of America Inc. is owned by its parent corporation Nintendo Co., Ltd. Nintendo Co., Ltd., whose stock is publicly traded in Japan, owns 100% of Nintendo of America Inc.

4. The names of all law firms and attorneys that appeared for Nintendo of America, Inc. in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Omar D. Galaria, Jay F. Utley, Daniel J. O'Connor

Yarbrough Wilcox, PLLC:  Debra E. Gunter

Herbert A. Yarbrough III

Cooley LLP: Stephen R. Smith, Lori R. Mason


April 11, 2014
Date

Stephen R. Smith

-i-

<u>Certificate of Interest for Micro Electronics, Inc.</u>

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The other real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. Micro Electronics, Inc. has no parent company and no publicly held company owns 10% or more of Micro Electronics, Inc.'s stock.

4. The names of all law firms and attorneys that appeared for Micro Electronics, Inc. in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D. Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and Herbert A. Yarbrough, III

April 11, 2014
Date

Jay F. Utley

-ii-

<u>Certificate of Interest for Hastings Entertainment, Inc.</u>

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. Hastings Entertainment, Inc. has no parent company and no publicly held company owns 10% or more of Hastings Entertainment, Inc.'s stock.

4. The names of all law firms and attorneys that appeared for Hastings Entertainment, Inc. in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D.
Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and Herbert A. Yarbrough, III

April 11, 2014
Date

Jay F. Utley

<u>Certificate of Interest for GameStop Corp.:</u>

1. The full names of every party represented by me are:  Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The real parties in interest represented by me are:  Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. There are no parent Corporations or any publicly held companies that own 10 percent or more of the stock of GameStop Corp.

4. The names of all law firms and attorneys that appeared for GameStop Corp. in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D. Galaria

Yarbrough Wilcox, PLLC:  Debra E. Gunter, and Herbert A. Yarbrough, III


<u>April 11, 2014</u>                                             _____
Date                                                                      Jay F. Utley

<u>Certificate of Interest for Best Buy Stores, L.P.</u>

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The other real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. Best Buy Stores, L.P. is a Virginia limited partnership with one general partner, BBC Property Co., and one limited partner, BBC Investment Co., both of which are wholly-owned subsidiaries of Best Buy Co., Inc., a publicly traded company. No publicly held company owns 10% or more of Best Buy Co., Inc.'s stock.

4. The names of all law firms and attorneys that appeared for Best Buy Stores, L.P. in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D. Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and Herbert A. Yarbrough, III

April 11, 2014
Date

Jay F. Utley

<u>Certificate of Interest for BestBuy.com, LLC</u>

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The other real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. BestBuy.com, LLC is a Virginia limited liability company with one member, Best Buy Stores, L.P. Best Buy Stores, L.P. is a limited partnership with one general partner, BBC Property Co., and one limited partner, BBC Investment Co., both of which are wholly-owned subsidiaries of Best Buy Co., Inc., a publicly traded company. No publicly held company owns 10% or more of Best Buy Co., Inc.'s stock.

4. The names of all law firms and attorneys that appeared for BestBuy.com, LLC in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D. Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and Herbert A. Yarbrough, III

April 11, 2014
Date

Jay F. Utley

<u>Certificate of Interest for Kmart Corporation</u>

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The other real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. Kmart Corporation is a wholly-owned subsidiary of Sears Holding Corporation, a publicly traded company.

4. The names of all law firms and attorneys that appeared for Kmart Corporation in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D. Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and

Herbert A. Yarbrough, III

April 11, 2014
Date

Jay F. Utley

<u>Certificate of Interest for Target Corporation</u>

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The other real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. Target Corporation is a publicly traded corporation and has no parent corporation. No publicly held corporation owns 10% or more of its stock.

4. The names of all law firms and attorneys that appeared for Target Corporation in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D.
Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and Herbert A. Yarbrough, III


April 11, 2014
Date

Jay F. Utley

<u>Certificate of Interest for Toys "R" Us-Delaware, Inc.</u>

1. The full names of every party represented by me are:  Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The other real parties in interest represented by me are:  Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. Toys "R" Us-Delaware, Inc.'s parent corporation is the privately-held Toys "R" Us, Inc.

4. The names of all law firms and attorneys that appeared for Toys "R" Us-Delaware, Inc. in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D. Galaria

Yarbrough Wilcox, PLLC:  Debra E. Gunter, and

Herbert A. Yarbrough, III

April 11, 2014
Date

Jay F. Utley

-ix-

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................1

RELIEF SOUGHT ..............................................................................3

ISSUES PRESENTED.........................................................................4

STATEMENT OF FACTS ...................................................................5

    A.    Nintendo Has No Connection to Texas..............................6

    B.    Secure Axcess Has Minimal Ties to the Eastern District of Texas...................................................................................6

    C.    Secure Axcess Named Eleven Retailer Defendants Who Have No Connection to the Underlying Infringement and Validity Issues, and Only a Tenuous Connection to Texas. .............................7

    D.    Nintendo and the Retailer Defendants Moved To Sever and Transfer the Claims Against Nintendo Out of the Eastern District of Texas. ..................................................8

    E.    The District Court Failed To Apply the "Customer Suit Exception" and Instead Applied Its Own Unique "Alternative Solution" To Keep the Case in the Eastern District of Texas..............9

STANDARD OF REVIEW ...............................................................12

REASONS WHY THE WRIT SHOULD ISSUE ...............................13

I.    The Writ Should Issue Because the District Court's Analysis Effectively Eliminates the Customer-Suit Exception in Cases Involving Retailer Defendants...................................................14

II.    The Writ Should Issue Because the District Court's Reliance on Damages as a Basis Not to Apply the Customer-Suit Exception Was Clearly Erroneous. ...........................................................20

    A.    The District Court Clearly Erred in Finding the Claims Against the Retailer Defendants Were Not Peripheral Based on Damages Issues. ...............................................21

-x-

## TABLE OF CONTENTS

**Page**

B.    The District Court Applied the Wrong Test to Determine Whether the Second *Shifferaw* Factor Was Met. ...............................25

III.    The Writ Should Issue Because the District Court's Decision To Treat the Convenience of Nintendo as a Secondary Factor Was Error. ................27

CONCLUSION ..................................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Bowman v. Monsanto Co.*,
   133 S. Ct. 1761 (2013) .......................................................................22

*Codex Corp. v. Milgo Elec. Corp.*,
   553 F.2d 735 (1st Cir. 1977) ......................................................... 15, 17

*Corry v. CFM Majestic Inc.*,
   16 F. Supp. 2d 660 (N.D. Va. 1998) ....................................................19

*In re BP Lubricants USA Inc.*,
   637 F.3d 1307 (Fed. Cir. 2011) ............................................................13

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) ..................................................... 13, 14

*In re Nintendo Co.*,
   544 F. App'x 934 (Fed. Cir. 2013) ................................... 13, 19, 27, 28

*In re Toyota Motor Corp.*,
   No. 2014-113 (Fed. Cir. Apr. 3, 2014) ........................................ 20, 28

*In re TS Tech. USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ..................................................... 13, 14

*Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*,
   No. 11-cv-234, 2012 U.S. Dist. LEXIS 114503 (E.D. Tex. May 30, 2012) .......22

*Intel Corp. v. ULSI Sys. Tech., Inc.*,
   995 F.2d 1566 (Fed. Cir. 1993) ............................................................22

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990) ..................................................... 16, 26

*Koh v. Microtek Int'l, Inc.*,
   250 F. Supp. 2d 627 (E.D. Va. 2003) ........................................ 16, 19, 20

*LG Elecs., Inc. v. Asustek Computers*,
   126 F. Supp. 2d 414 (E.D. Va. 2000) ........................................ 16, 22, 29

*LG Elecs., Inc. v. First Int'l Computer, Inc.*,
   138 F. Supp. 2d 574 (D.N.J. 2001) .......................................................... 16, 20, 26

*Lugus IP LLC v. Volvo Car Corp.*,
   No. 11-cv-811, 2012 WL 1715983 (E.D. Va. May 15, 2012)...................... 22, 29

*MGT Gaming, Inc. v. WMS Gaming, Inc.*,
   --- F. Supp. 2d ----, No. 12-cv-741, 2013 WL 5755247 (S. D. Miss. Oct. 23, 2013) ..........................................................................................................27

*Mobil Oil Corp. v. W.R. Grace & Co.*,
   334 F. Supp. 117 (S.D. Tex. 1971) ......................................................................28

*Oplus Techs., Ltd., v. Sears Holding Corp.*,
   No. 11-cv-8539, 2012 U.S. Dist. LEXIS 83597 (N.D. Ill. June 15, 2012) .........22

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
   553 U.S. 617 (2008)..............................................................................................22

*Round Rock Research, LLC v. Oracle Corp.*,
   No. 11-cv-332, 2011 WL 5600363 (E.D. Tex. Oct. 21, 2011).................... 19-20

*Shifferaw v. Emson USA*,
   No. 09-cv-54, 2010 WL 1064380 (E.D. Tex., Mar. 18, 2010)................... passim

*Siemens Aktiengesellschaft v. Sonotone Corp.*,
   370 F. Supp. 970 (N.D. Ill. 1973) ................................................................ 16, 22

*Tomita Techs. USA, LLC v. Nintendo Co.*,
   No. 11-cv-4256, 2013 WL 4101251 (S.D.N.Y. Aug. 14, 2013) ........................23

*Toshiba Corp. v. Hynix Semiconductor, Inc.*,
   No. 04-cv-2391, 2005 WL 2415960 (N.D. Tex. Sept. 20, 2005)............... passim

*TV Interactive Data Corp. v. Sony Corp.*,
   929 F. Supp. 2d 1006 (N.D. Cal. 2013) ..............................................................23

*William Gluckin & Co. v. Int'l Playtext Corp.*,
   407 F.2d 177 (2d Cir. 1969)......................................................................... 16-17, 29

## Statutes

28 U.S.C. § 1404(a) ........................................................................................ passim

**Rules**

Fed. R. Civ. P. 21 ......................................................................................8

# INTRODUCTION

The district court denied a motion to sever and transfer claims against

Nintendo of America Inc. ("Nintendo") from claims against retailers named as

defendants in the same case by plaintiff Secure Axcess.  The decision departs from

this Court's guidance and from a host of unanimous district court decisions, which

instead applied the customer-suit exception to sever and transfer.  The district court

found that Nintendo was the "true defendant" as to infringement and invalidity,

staying the case against the retailers, but used the possibility of an unlikely

situation, differing measures of damages on the same products, to deny severance

and transfer and refuse to apply the customer-suit exception.  Left intact, this

holding will effectively create a loophole permitting plaintiffs to circumvent the

customer-suit exception by simply naming retailers as defendants in any suit

against a manufacturer and alleging the future possibility of different measures of

damages on the same products.

The customer-suit exception, however, favors determining venue based on

convenience for the "true defendant" regardless of where a patentee may have filed

a case against customer defendants.  The district court's decision arose from its

view that application of the customer-suit exception "should be tempered when

severance of the manufacturer is made primarily to facilitate transfer," especially

when the suit is filed in an "experienced" patent court like the Eastern District of Texas.

This erroneous view led the district court to what it termed an "alternative solution"—instead of severing and transferring the claims against Nintendo, it would bifurcate the liability and damages phases of the case, stay the case as to the retailers, and retain venue of the entire action. In crafting this "alternative solution," the district court concluded that the claims against the retailers should not be severed because, although they are peripheral to infringement and validity, they may not be peripheral with respect to damages. The district court reasoned that it might be *possible* that plaintiff, assuming that it prevails on its infringement claims, *might* be able to collect an incrementally higher damages award from the retailer defendants than it could from Nintendo. The district court's analysis is fundamentally flawed, among other reasons, because of the exhaustion doctrine, which permits only one recovery of patent damages.

The district court's analysis runs counter to this Court's guidance and the uniform body of district court precedent regarding severance and transfer. It also, without any legal or factual analysis, accepts and relies on Plaintiff's dubious theory that higher damages may be available from the Retailer Defendants than from Nintendo.

2

In addition, the district court's ruling fundamentally undermines the customer-suit exception. The result of the district court's analysis would mean a patentee's chosen forum could almost never be challenged—no matter how inconvenient for the true defendant, or how divorced the customers are from the merits of a case—so long as retailer customers were named as defendants in the suit. This result would effectively destroy the "customer suit exception" in the severance-and-transfer context. It would also provide a roadmap for future plaintiffs to name a host of retailers as token defendants (and to allege differing damages on the same products) to immunize their chosen venue against transfer. The writ should issue to prevent this unprecedented and unwarranted result.

## RELIEF SOUGHT

Nintendo and the Retailer Defendants respectfully request that the Court grant this petition for a writ of mandamus and vacate the district court's March 7 order denying Defendants' motion to sever and transfer the claims against Nintendo. Petitioners further request that the Court remand with instructions to sever the claims against Nintendo and transfer those claims to the Western District of Washington, and to continue the stay of the claims against the Retailer Defendants.

## ISSUES PRESENTED

Did the district court clearly abuse its discretion in refusing to sever the patent infringement claims against Nintendo from the claims against retail sellers or resellers of accused Nintendo products and transfer the claims against Nintendo to the Western District of Washington?  Specifically:

1.    Did the district court erroneously refuse to apply the customer-suit exception to sever and transfer the claims against the true defendant, Nintendo?

2.    Did the district court err as a matter of law in concluding that the claims against the Retailer Defendants were not peripheral based on Plaintiff's speculation that higher damages may be available against the Retailer Defendants, even though the court concluded that Nintendo is the true defendant as to infringement and validity, and even though it stayed the claims against the Retailer Defendants until infringement and validity are resolved?

3.    Did the district court err as a matter of law by analyzing whether adjudicating infringement and validity would *necessarily* resolve all claims rather than whether it would *potentially* do so?

4.    Did the district court clearly abuse its discretion by failing to analyze whether the interests of justice and convenience of the parties warrant transfer of the claims against Nintendo to the Western District of Washington under 28 U.S.C.

§ 1404(a), especially in light of the district court's conclusion that Nintendo is the true defendant as to infringement and validity?

## STATEMENT OF FACTS

Plaintiff Secure Axcess filed a patent infringement action in the Eastern District of Texas against Nintendo of America Inc. and eleven Retailer Defendants that sell or resell the accused Nintendo products.[1]  A15-32.  Early in the case, Nintendo asked the district court to sever the claims against Nintendo from the claims against the Retailer Defendants and transfer the claims against Nintendo to the Western District of Washington.  A46-66.  The district court "agree[d] with Nintendo that it is the 'true defendant'" as to infringement and validity and that the claims against the Retailer Defendants are peripheral as to those core issues.  A11. The court then bifurcated the liability and invalidity issues from the damages issues and stayed the claims against the Retailer Defendants pending a determination on infringement and validity against Nintendo.  A13.  Yet the district court refused to take the final step of severing the claims against Nintendo, and declined even to consider whether those claims should be transferred to the Western District of Washington, which is the proper and clearly more convenient venue to try the claims against Nintendo.  A12 n.6, 13.

---

[1] Secure Axcess later amended its complaint to add Nintendo Co., Ltd., Nintendo's Japanese parent company, and another Amazon entity, Amazon.com, Inc., as defendants.  A365-413.

A.    **Nintendo Has No Connection to Texas.**

Nintendo's parent company, Nintendo Co., Ltd., develops and designs a line of popular handheld gaming products under the Nintendo DS brand—including the Nintendo DS, Nintendo DS Lite, Nintendo DSi, Nintendo DSi XL, Nintendo 3DS, and Nintendo 3DS XL (the "accused products") in Japan.  A194, ¶¶ 3-5.  Nintendo imports, markets, sells, and distributes the accused products to U.S. retailers. A194, ¶ 4.

Nintendo is incorporated in the State of Washington and has its principal place of business in Redmond, Washington, which is located in the Western District of Washington.  A193, ¶ 2; A196, ¶ 13.  Nintendo's Redmond headquarters is the strategic center of its business.  A194, ¶ 7.  Nintendo's key decisions, including those related to sale and marketing of the accused products, occur in Redmond.  *Id.*  Nintendo maintains technical, marketing, and financial documents related to the accused products in Redmond.  A194-95, ¶¶ 8-9.

Nintendo does not operate any office in Texas, employ anyone in Texas, or maintain any documents in Texas.  A195, ¶ 10.

B.    **Secure Axcess Has Minimal Ties to the Eastern District of Texas.**

Secure Axcess, a self-designated "non-practicing entity," is a Texas limited liability company.  A228; A242, ¶ 4.  Beyond its corporate form, however, Secure Axcess has no meaningful connection to the Eastern District of Texas.  None of its

6

executives or relevant witnesses reside in the Eastern District, and many do not reside in Texas. A71-72, ¶¶ 24-36. The company President resides in Omaha, Nebraska, which, until Defendants moved to sever and transfer, was designated as Secure Axcess's "Principal Office" in its Texas corporate filings. A242-43, ¶ 10, 286-88.

Secure Axcess now rents a small, 200-square-foot virtual office in Plano, Texas that it claims as its principal place of business. A53, 136, 242, ¶¶ 7-8. Secure Axcess alleges that one executive "primarily" works out of this office, but this individual lives in Austin, Texas, three and half hours away from Plano. A241, ¶ 2, 72, ¶ 31. Secure Axcess has not identified any specific relevant evidence maintained at the Plano office. Further, Secure Axcess's business is managed by a company located in Wilmington, Delaware. A71, ¶ 21, 141.

### C. Secure Axcess Named Eleven Retailer Defendants Who Have No Connection to the Underlying Infringement and Validity Issues, and Only a Tenuous Connection to Texas.

In addition to Nintendo, Secure Axcess also named as defendants eleven retailers that sell or resell the accused Nintendo products. These Retailer Defendants have no role in, participation in, or knowledge of the development, design, manufacture, or importation of the accused products. A198-215. None of the Retailer Defendants have ever received any technical documents relating to the hardware, software, or functionality of the accused products. A198-215. It is

7

undisputed that the Retailer Defendants have no evidence—beyond what is already available from Nintendo—relevant to the core issues of infringement and validity.

Some of these Retailer Defendants have ties to the State of Texas, but no meaningful ties to the Eastern District.  Two Retailer Defendants have their principal place of business in Texas, but for both, it is nearly 200 miles away from the Marshall courthouse and outside the Eastern District.  A55, 200, 202.

### D.  Nintendo and the Retailer Defendants Moved To Sever and Transfer the Claims Against Nintendo Out of the Eastern District of Texas.

The case has only the most tenuous of connections with the Eastern District of Texas.  None of the parties are headquartered in the Eastern District.  A54-55, 198-215.  None of the parties' executives or relevant employees reside in the Eastern District.  A53, 61.  No witnesses reside in the Eastern District.  A62.  No relevant evidence can be found in the Eastern District.  A59.

Given these facts, Defendants moved to sever the claims against Nintendo and to transfer those claims to the Western District of Washington under Federal Rules of Civil Procedure 21 and 28 U.S.C. § 1404(a).  A46-66.  Defendants relied on an unbroken line of precedent in which courts have severed peripheral claims against retailer defendants from those asserted against a manufacturer and transferred the claims against the manufacturer to a more convenient venue.

8

Defendants later moved to stay the case while their motion to sever and transfer was pending.  A482-504.  The district court granted the stay, concluding: "a short stay pending resolution of the severance and transfer issues is likely to simplify the issues in this case" and would not prejudice Plaintiff.  A480-481.

### E. The District Court Failed To Apply the "Customer Suit Exception" and Instead Applied Its Own Unique "Alternative Solution" To Keep the Case in the Eastern District of Texas.

On March 7, 2014, the district court denied the joint motion by Nintendo and the Retailer Defendants to sever and transfer the claims against Nintendo to the Western District of Washington.  A1-14.

The district court recognized the long line of cases ordering severance and transfer of claims against a manufacturer pursuant to the "customer-suit exception" doctrine.  A5.  This doctrine developed as an exception to the first-to-file rule, directing courts to give precedence to a manufacturer's later-filed declaratory judgment action over an earlier-filed suit by a patentee against customers because the manufacturer is the "true defendant" in the patentee's customer suit.  A4-5.  The exception allows a defendant manufacturer to litigate infringement and validity in the venue of its choice, while the claims against the customers are stayed in the patentee-plaintiff's chosen forum.

The district court recognized that many district courts (including the Eastern District of Texas) have applied the customer-suit exception to sever and transfer

claims against the manufacturer when the manufacturer and its retailer customers are sued in the same case. A5. The court also recognized that district courts have applied the customer-suit exception to sever-and-transfer motions using the three-factor test set forth in *Shifferaw v. Emson USA*, No. 09-cv-54, 2010 WL 1064380, at *1 (E.D. Tex., Mar. 18, 2010): (1) whether the remaining claims are "peripheral" to the severed claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims. A8. The district court, however, decided to take a different approach in which it would consider the third factor only if it concluded that the first two factors were met. Because the court concluded that factors (1) and (2) were not met, it never considered factor (3), whether the Western District of Washington would be a more convenient venue.

The court concluded under the first factor that the claims against the Retailer Defendants are not peripheral. It reached this conclusion despite finding:

- Nintendo is the "true defendant" and the Retailer Defendants are only peripheral as to infringement and validity;

- "Nintendo is the sole manufacturer in the United States of the only accused product … and sells it wholesale to the Retailer defendants"[2];

---

[2] As noted above, Nintendo Co., Ltd. is actually responsible for the manufacture of the accused products, which occurs outside the United States. Regardless, the key

- The Retailer Defendants have no role in designing the accused product and "likely have very little to offer in the way of evidence regarding the underlying technology of the accused devices or the substantive aspects of the infringement case"; and

- The Retailer Defendants were willing to stipulate to be bound by the findings against Nintendo as to infringement and validity.  A2, 9-11.

The district court found the claims against the Retailer Defendants should not be severed and transferred based primarily on its analysis of how issues relating to damages applied to the first and second *Shifferaw* factors.

Regarding the first *Shifferaw* factor, the district court found that the retailer claims were not peripheral based on speculation that the damages against the Retailer Defendants could be higher than the damages against Nintendo.  The court reasoned that the damages could differ because (1) retail prices are higher than wholesale prices, and (2) Retailer Defendants may sometimes bundle games and accessories for sale with Nintendo DS products (which, in the district court's analysis, can lead to higher damages against the retailers than against the manufacturer due to convoyed sales).

---

point is that the Retailer Defendants have no involvement in or knowledge of the manufacturing of the accused products.

The district court also concluded the second *Shifferaw* factor was not satisfied because, even if the claims against Nintendo are resolved, there could still be issues regarding damages as to the Retailer Defendants. It based this conclusion on a hypothetical future scenario in which: (1) Nintendo's products would be found to infringe at least one valid claim; and (2) Secure Axcess could, and thus *possibly* would, choose to seek damages against the Retailer Defendants in the hope that it could get higher damages than it could from Nintendo. A9-10.

The court acknowledged that this scenario would be unusual and undertook no analysis to substantiate the likelihood that this chain of events would actually come to fruition. Nonetheless, the district court reasoned that if Secure Axcess pursued that route, returning to the Eastern District of Texas to litigate damages against the Retailer Defendants would "significantly frustrate[]" the goals of judicial economy. A7-8. Perceiving an "undesirable dichotomy of potential outcomes," the court adopted an "alternative solution" to applying the customer-suit exception to sever and transfer, instead retaining the claims against Nintendo, bifurcating infringement and validity from damages, and staying the case against the Retailer Defendants pending resolution of infringement and validity. A8.

## STANDARD OF REVIEW

"The writ of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power." *In re TS Tech. USA*

*Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008).   A "clear abuse" of discretion occurs where, as here, the court below reached a "patently erroneous result." *Id.* at 1319. Although the decision whether to sever is one as to which the district court has discretion, the court must exercise that discretion "within the boundaries set by relevant statutes and precedent." *In re EMC Corp.*, 677 F.3d 1351, 1355 (Fed. Cir. 2012).  In ruling on a motion to sever and transfer, a "district court abuses its discretion if it relies on an erroneous conclusion of law." *Id.*  Mandamus may issue "to further supervisory or instructional goals where issues are unsettled and important." *In re Nintendo Co.*, 544 F. App'x 934, 936 (Fed. Cir. 2013) (citing *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011)).

Where a writ of mandamus is the only means available to correct a patently erroneous result, the right to a writ of mandamus is "clear and indisputable," as required for the writ's issuance. *In re TS Tech.*, 551 F.3d at 1318-19.

## REASONS WHY THE WRIT SHOULD ISSUE

This Court should issue a writ of mandamus because the district court clearly erred by refusing to sever and transfer the claims against Nintendo, the recognized "true defendant" in this case.  The decision employs faulty legal analyses and, absent correction, will force Nintendo to try all issues against it in a clearly inconvenient forum.  The court's unsupported refusal to apply the customer-suit exception effectively created a blanket rule of "retailer-suit

immunity" that would foreclose applying the customer-suit exception in virtually every patent case involving retailer defendants. Any patentee could sue the "true-defendant" manufacturer in an inconvenient forum and keep them there merely by adding retailer defendants.

A writ of mandamus is the only remedy available to Nintendo. An appeal from a final judgment will not remedy Nintendo's harm. *See In re EMC Corp.*, 677 F.3d at 1355; *In re TS Tech.*, 551 F.3d at 1322 ("[I]t is clear under Fifth Circuit law that a party seeking mandamus for a denial of transfer clearly meets the 'no other means' requirement."). Following final judgment in Texas, Nintendo would be unable to show that it would have won the case had it been litigated in the Western District of Washington and will have already shouldered the burden of litigating in an inconvenient forum. *In re TS Tech.*, 551 F.3d at 1322.

**I.    The Writ Should Issue Because the District Court's Analysis Effectively Eliminates the Customer-Suit Exception in Cases Involving Retailer Defendants.**

A writ should issue because the district court reached the clearly erroneous decision that a plaintiff can keep claims against a true-defendant manufacturer in an inconvenient forum simply by suing a retailer who resells the accused products. The district court's reliance on damages to refuse to sever represents a sharp break with cases applying the customer-suit exception to protect the interest of the true-defendant manufacturer in litigating in a convenient forum. Under the district

14

court's analysis, any court could retain claims instead of severing and transferring based merely on the speculative and remote possibility that (1) a plaintiff could someday choose to seek damages against retailers rather than the manufacturer, and (2) damages between the retailers and manufacturer would not be common. This decision, if left undisturbed, would allow a plaintiff to secure its preferred venue in a suit against a true-defendant manufacturer by simply adding retailer defendants.  In effect, the district court created a retailer-suit immunity to application of the consumer-suit exception to sever-and-transfer motions.

The customer-suit exception was designed to address the precise procedural challenge faced by the district court, *i.e.*, how to resolve venue issues when the same infringement claims are pending at the same time against a manufacturer and its retailer customers.  The customer-suit doctrine recognizes that because the manufacturer is the "true defendant" in the case against the retailer, the threshold liability claims against the manufacturer should be decided before reaching the secondary issue of the retailers' liability.  *See Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977) ("At the root of the [customer-suit exception] is the recognition that, in reality, the manufacturer is the true defendant in the customer suit… [I]t is a simple fact of life that a manufacturer must … avoid the damaging impact of an adverse ruling against its products.").  In the first-to-file context, because the manufacturer is the true defendant, the manufacturer's chosen

15

forum is given precedence, even though typical first-to-file analysis would favor the patentee's chosen forum in the first-filed litigation.  *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).

The courts have uniformly applied the customer-suit exception to sever and transfer the claims against a manufacturer to a more convenient forum when a plaintiff sues both the manufacturer and its retailer customers in the same court. *See Shifferaw v. Emson USA*, No. 09-cv-54, 2010 WL 1064380, at *1 (E.D. Tex. Mar. 18, 2010) (citing *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. 04-cv-2391, 2005 WL 2415960, at *4-7 (N.D. Tex. Sept. 20, 2005)); *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 631-32 (E.D. Va. 2003); *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 584 (D.N.J. 2001); *LG Elecs., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 421-22 (E.D. Va. 2000)); *Siemens Aktiengesellschaft v. Sonotone Corp.*, 370 F. Supp. 970, 972 (N.D. Ill. 1973) ("Were the rule otherwise, a plaintiff could preclude the court from considering whether transfer would serve the interest of justice by including a defendant, not subject to suit in the more convenient district, who was in some manner peripherally involved in the alleged wrongdoing.") (internal citation omitted).  This is a natural and logical application of the customer-suit exception, which is a flexible doctrine to be applied consistently with the § 1404(a) convenience factors. *See William Gluckin & Co. v. Int'l Playtext Corp.*, 407 F.2d 177, 180 (2d Cir.

16

1969) (customer-suit exception analysis properly took into account the "balanc[e] of convenience of the parties and witnesses").

The district court should have applied the customer-suit exception in this case to sever and transfer the claims against Nintendo to the clearly more convenient forum of the Western District of Washington.  Departing from well-established precedent, the district court instead concluded that, rather than severing and transferring the case against Nintendo, it would bifurcate liability and damages, retain the case in the Eastern District of Texas (without evaluating the convenience factors), and stay the claims against the Retailer Defendants.  This "alternative solution," as the district court referred to it, blatantly disregards Nintendo's venue rights.  A8.  *See Codex*, 553 F.2d at 738 ("Venue rights, contrary, perhaps, to the view of the district court, which did not mention them at all, are important, particularly in patent litigation").  The district court erred by not considering whether Nintendo has a right to transfer the claims against it to the Western District of Washington.  *See* Section III below.

The district court's reliance on damages to avoid the customer-suit exception creates a retailer exemption that would swallow the customer-suit exception in the context of severance and transfer.  Under the district court's new bright-line rule that courts need not "not reach the issue of severance and transfer" where "the scope and degree of damages are not common."  A10.  Thus, any court could retain

17

core claims instead of severing and transferring to a more convenient venue based on the theoretical and remote possibility that a plaintiff could someday chose to seek damages against other defendants rather than the manufacturer.

The district court declined to sever and transfer based primarily on the possibility that the amount of damages against Nintendo may be less than against the Retailer Defendants because of higher retail prices and the retailers' sale of accessory items that Plaintiff may seek to capture as "convoyed sales." But this possibility is present in almost every infringement action against a manufacturer and its retailer customers. Thus, by the district court's logic, there will almost always be a possibility that the plaintiff will allege that retail prices or potential "convoyed sales" will eventually be found to distinguish the damages available from particular defendants. Allowing courts to decline severance and transfer based on these run-of-the-mill facts would reserve the severance-and-transfer remedy for only the exceptional case where defendants could *prove* at the time the complaint was filed that damages would be common between the manufacturer and the retailers. That is not the law.

The district court further erred by concluding that the remedy of severance and transfer "should be reserved for that small subset of cases where an attempt to manipulate venue is clear." A7. This is contrary to this Court's clear guidance that district courts must consider "whether the parties should have been severed for

18

purposes of *facilitating transfer* of venue." *In re Nintendo*, 544 F. App'x at 941 (emphasis added). Venue manipulation is not part of the *Shifferaw* three-factor test, a test the district court did not take issue with and purported to apply. Nothing in the case law requires a showing of manipulation for a true-defendant manufacturer to invoke the right to severance and transfer.[3] *See Toshiba Corp.*, 2005 WL 2415960, at *5-8 (ordering severance and transfer without suggesting venue manipulation is required); *Shifferaw*, 2010 WL 1064380, at *6 (same); *Koh*, 250 F. Supp. 2d at 632-33 (same). What is more, the district court's "alternative solution" invites venue manipulation by incentivizing patentees to add token retailer defendants to secure their preferred forum beyond the reach of § 1404(a). *See Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 664-65 (N.D. Va. 1998).

Finally, the district court also rested its decision on its own experience in patent cases, another rationale that would apply in every case. This is at best a neutral factor given that the Western District of Washington is equally equipped and experienced in patent litigation. A62, 73-74, ¶¶ 45-46, 177-89. *See Round*

---

[3] Even if some showing of venue manipulation were required, the motion to sever and transfer presented evidence of manipulation by Secure Axcess in an attempt to justify venue in the Eastern District of Texas. Plaintiff relies on a virtual office in Plano, Texas to attempt to establish its principal place of business is in the Eastern District, but this was inconsistent with Secure Axcess's corporate filings. *See* A137-144. Secure Axcess amended its corporate filings to list the Plano office as its principal place of business only after Defendants pointed out this fact in their motion to sever and transfer. A242-43, ¶ 10, 286-88. And no potential witness or executive of Secure Axcess resides in the Eastern District. A71-72, ¶¶ 24-36.

*Rock Research, LLC v. Oracle Corp.*, No. 11-cv-332, 2011 WL 5600363, at *9 (E.D. Tex. Oct. 21, 2011) ("[R]egardless of the Eastern District's participation in the Patent Pilot Program, both Courts are capable of applying patent law appropriately.").

## II.    The Writ Should Issue Because the District Court's Reliance on Damages as a Basis Not to Apply the Customer-Suit Exception Was Clearly Erroneous.

This Court, in a recent order granting a writ of mandamus to correct a clearly erroneous venue decision, acknowledged that the district court on remand needed to analyze the manufacturer's request for severance under *Shifferaw*. *See In re Toyota Motor Corp.*, No. 2014-113, slip op. at 6 (Fed. Cir. Apr. 3, 2014) (citing *Shifferaw*). Under the *Shifferaw* line of cases, the courts consider three factors to determine whether the claims against a manufacturer should be severed and transferred under the customer-suit exception: (1) whether the remaining claims (here, the claims against the Retailer Defendants) are "peripheral" to the severed claims; (2) whether adjudication of the severed claims (here, the infringement claims against Nintendo) would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims. *Shifferaw*, 2010 WL 1064380, at *1 (citing *Toshiba*, 2005 WL 2415960, at *4-7; *Koh*, 250 F. Supp. 2d at 632; *LG Elecs.*, 138 F. Supp. 2d at 584).

To avoid applying the customer-suit exception to sever and transfer, the district court relied on a conclusion that the amount of damages against the manufacturer could differ from those against the retailer defendants. Because damages against retailer defendants could be higher, the court reasoned that neither of the first two *Shifferaw* factors applied. Specifically, the district court concluded that (1) the claims against the retailer defendants were not peripheral, and (2) severance might not resolve all issues against the retailer defendants. The district court got it wrong on both factors.

### A.    The District Court Clearly Erred in Finding the Claims Against the Retailer Defendants Were Not Peripheral Based on Damages Issues.

The district court's decision rested in part on an erroneous conclusion that the claims against Retailer Defendants are not peripheral under the first *Shifferaw* factor because the amount of damages against the Retailer Defendants could differ from damages against Nintendo. This possibility, remote from the threshold liability issues, is not legally sufficient to find that the claims against the Retailer Defendants are not peripheral, and the district court's decision contradicts every other decision on this issue. [4] The district court reached this decision without any factual or legal analysis into the merits of Plaintiff's damages theories.

---

[4] *Shifferaw*, 2010 WL 1064380, at *3 ("Where a single manufacturer is the only entity in the U.S. who makes and sells the only accused product to Retailer Defendants, a patent infringement claim against a retailer is peripheral to the

As an initial matter, while the district court found Plaintiff should have the opportunity to pursue damages from both Nintendo and the Retailer Defendants (A10), a plaintiff may recover patent infringement damages only once. *See Lugus IP LLC v. Volvo Car Corp.*, No. 11-cv-811, 2012 WL 1715983, at *9 n.1 (E.D. Va. May 15, 2012) (rejecting plaintiff's argument that severance would limit recovery, as a "patentee can collect only one royalty from a patent infringement") (citing *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566 (Fed. Cir. 1993)); *Shifferaw*, 2010 WL 1064380, at *3. As the Supreme Court has made clear, the exhaustion doctrine precludes Secure Axcess from recovering a royalty from both Nintendo and from the Retailer Defendants. *See Bowman v. Monsanto Co.*, 133 S. Ct. 1761, 1766 (2013) (under the exhaustion doctrine, "the initial authorized sale of a patented item terminates all patent rights to that item" and "confers on the purchaser, or any subsequent owner, the right to use [or] sell the thing as he sees fit.") (internal quotations omitted); *see also Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008).

---

claims against the manufacturer"); *Toshiba*, 2005 WL 241960, at *5; *LG Elecs.*, 126 F. Supp. 2d at 421-22 ("[A] patent infringement claim against a distributor is peripheral to a claim against the manufacturer."); *Oplus Techs., Ltd., v. Sears Holding Corp.*, No. 11-cv-8539, 2012 U.S. Dist. LEXIS 83597, at *7-8 (N.D. Ill. June 15, 2012); *Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, No. 11-cv-234, 2012 U.S. Dist. LEXIS 114503, at *21 (E.D. Tex. May 30, 2012); *Siemens Aktiengesellschaft*, 370 F. Supp. at 972.

The district court further concluded that "scope and degree of damages are not common" between Nintendo and the Retailer Defendants. A10. Secure Axcess argued that damages could differ between Nintendo and the Retailers because (1) retail prices are higher than wholesale prices, and (2) the Retailers may sell Nintendo DS and 3DS units with games and accessories. But these arguments turn on detailed factual issues that will be disputed. Moreover, neither Plaintiff nor the district court articulated any legal basis for either argument.

As to the first argument regarding retail prices, neither Plaintiff nor the district court offered any authority to suggest that reasonable royalty damages against Nintendo could not take into account retail prices. *See TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1028 (N.D. Cal. 2013) (". . . Sony lacks any precedential support for the argument that a hypothetically-calculated reasonable royalty must be tied to wholesale prices as opposed to retail prices.").

As to the second argument regarding the Retailers' sale of games and accessories, Plaintiff did not argue, and the district court did not consider, whether awarding damages based on sales of games and accessories is justifiable given that the patent is limited to a method for using a dual screen. *See* A244-274. *See, e.g., Tomita Techs. USA, LLC v. Nintendo Co.*, No. 11-cv-4256, 2013 WL 4101251, at *8 (S.D.N.Y. Aug. 14, 2013) (ordering remittitur where jury's award weighed too heavily the profit Nintendo earned on games for the Nintendo 3DS because "the

23

vast majority of games designed for the 3DS do not require or even utilize the technology covered by the [asserted] patent," and further reasoning that "the [asserted] patent's technology was used only in two features" and thus was "ancillary to the core functionality of the 3DS as a gaming system").

In short, the district court accepted as a foregone conclusion that damages will differ as between Nintendo and the Retailer Defendants when in fact any such distinctions will turn on hotly disputed factual and legal issues that the district court did not even attempt to address. This was error.

It was also erroneous for the district court to rely on the remote *future* possibility of distinctions in damages to decide if the Retailers are peripheral to the liability claims *presently* proceeding against Nintendo. This puts the cart before the horse. As the district court acknowledged, its own "real world experience" is that in most cases plaintiffs seek to collect damages from the manufacturer rather than the retailers, making such potential damages distinctions a moot point. A7-8.

The district court further erred by assuming that severing and transferring the claims against Nintendo would "directly or indirectly foreclose[]" Plaintiff from "pursu[ing] damages from either Nintendo or the Retailer Defendants or both." A10. But Plaintiff could pursue damages against the Retailers in the Eastern District of Texas in the unlikely event it was unable to or chose not to pursue or collect a judgment against Nintendo.

24

The district court's reasoning would undercut the purpose of the customer-suit exception in the severance-and-transfer context. If the fact that an allegedly infringing product may be sold with accessories precludes severance and transfer, every consumer electronics manufacturer can now be forced to litigate in a plaintiff's preferred forum without the protection §1404(a) is intended to provide. Cell phones, for example, are commonly offered for sale with headphones, chargers, and various other accessories. This aspect of the analysis further strengthens the "retailer-suit" immunity that the decision would create.

## B.    The District Court Applied the Wrong Test to Determine Whether the Second *Shifferaw* Factor Was Met.

The district court also erred in concluding that the second *Shifferaw* factor was not met because of the mere possibility of differing damages. Under the second factor in *Shifferaw*, whether severance is appropriate depends in part on whether resolving the severed claims would *potentially* resolve the remaining claims against the Retailer Defendants. Instead of applying this well-established rule, however, the district court concluded that this factor was not satisfied because resolving the common infringement and validity issues would not *necessarily* dispose of "the issue of damages based on a reasonable royalty." A11.

The district court's analysis is backward. There can be no dispute that resolving the severed claims against Nintendo would potentially resolve the claims against the Retailer Defendants. Indeed, the district court recognized this: "The

25

Retailer Defendants could only be found liable if the patent infringement claims against Nintendo are resolved in Plaintiff's favor." A11. Further, the Retailer Defendants agreed to be bound by the judgment of the Western District of Washington and now have so stipulated. A2, 476-79. *See LG Elecs.*, 138 F. Supp. 2d at 585 (holding that stipulation to be bound by transferee court decision supported the conclusion that resolving the transferred claims would potentially resolve the claims against peripheral defendants). Additionally, as discussed above, if Nintendo were found liable for patent infringement, and Secure Axcess collected a royalty from Nintendo, the patent exhaustion doctrine would preclude Secure Axcess from also recovering from the Retailer Defendants.

The district court cited no law in support of its analysis, nor did it acknowledge the contrary decisions from other courts, including other judges in the Eastern District of Texas. These cases show the error in the district court's reasoning. For example, the *Shifferaw* decision held that the possibility of enhanced damages against two Retailer Defendants based on willfulness did not undermine the propriety of severing and transferring the claims against the manufacturer. *Shifferaw*, 2010 WL 1064380, at *3 ("Although the plaintiff may have to present evidence of willful infringement against the two Retailer Defendants, this is not a case where severance will create multiple lawsuits that have to be developed in their entirety."); *see also Katz*, 909 F.2d at 1464

26

(customer-suit exception applied even though "there may be additional issues involving the defendants in the [customer suit]," because its "prosecution will be advanced" if patentee prevailed on infringement and validity and would be mooted if the patentee is unsuccessful); *Nintendo*, 544 F. App'x at 941 (in discussing severance of retailer defendant claims, noting that these defendants are not likely to have evidence regarding *liability* issues).

## III. The Writ Should Issue Because the District Court's Decision To Treat the Convenience of Nintendo as a Secondary Factor Was Error.

Based on the district court's conclusion that the first and second *Shifferaw* factors were not met, it declined to consider the third factor—whether transfer to the Western District of Washington is warranted under § 1404(a).  Under the district court's analysis, the convenience of the manufacturer need be considered only if severance is warranted under the first two *Shifferaw* factors.

This approach flatly contradicts this Court's direction in the *Nintendo* and *Toyota* cases that a severance and transfer analysis should consider the § 1404(a) convenience factors.  This Court has made clear that a district court should take the interests of justice and convenience of the parties under 28 U.S.C. § 1404(a) into account when ruling on a motion to sever and transfer by a "true defendant" (here, Nintendo).  *Nintendo*, 544 F. App'x at 941; *accord MGT Gaming, Inc. v. WMS Gaming, Inc.*, --- F. Supp. 2d ---, No. 12-cv-741, 2013 WL 5755247, at *11 (S.D. Miss. Oct. 23, 2013) (ruling on a motion to sever and transfer "will involve a

consideration of 'whether the movants have made a clear showing that the ***balance***

***of convenience*** and the interests of justice require the proposed actions.'")

(quoting *Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F. Supp. 117, 121 (S.D. Tex.

1971)).  Similarly, in *Toyota*, this Court directed the district court on remand to

conduct the *Shifferaw* severance analysis taking into account the Court's

conclusion that "putting [the retailer defendants] aside," the manufacturer "has a

clear right to transfer." *In re Toyota*, slip op. at 6.

Importantly, this Court in *Nintendo* faulted the district court because it

"never analyzed whether [the] litigation has any meaningful connection to the

Eastern District of Texas," *Nintendo*, 544 F. App'x at 941, and chided the district

court for "never even mention[ing] § 1404(a) in its order." *Id.*  The Court

explained that the district court's decision was "contrary to the principle that a trial

court must first address whether it is a proper and convenient venue before

addressing any substantive portion of the case." *Id.*  The Court clearly indicated

that whether litigating in the Eastern District of Texas would be consistent with the

§ 1404(a) convenience factors was an integral part of the severance analysis:

"[W]e conclude that the district court erred by not *beginning its analysis* by

addressing whether the parties should have been severed *for purposes of*

*facilitating transfer of venue*." *Id.* at 942 (emphasis added).   In deciding whether

to sever and transfer, the district court must "consider whether fairness *and*

28

*convenience*" warrant severance. *Id.* (emphasis added); *see also Lugus IP*, 2012 WL 1715983, at *3 (whether severance is proper depends in part on whether claims against the manufacturer should be transferred under § 1404(a)).

Contrary to this clear direction, the district court failed to consider whether the claims against Nintendo should be transferred. Mandamus is warranted on this basis alone. Not only did the district court fail to give weight to the § 1404(a) convenience factors as required by this Court, it went further by concluding that the fact that the motion to sever was coupled with a request to transfer venue should "temper[ ]" the general rule requiring severance of claims against retailers from those against a manufacturer. A6. The district court cited no authority nor gave any rationale to support its conclusion that severance is any less appropriate when the claims against the manufacturer are more appropriately tried in another venue. This Court in *Nintendo* underscored that the opposite is true, requiring that the district court "decide [severance] for purposes of fairness and *convenience*." *Nintendo*, 544 F. App'x at 942 (emphasis added); *see also William Gluckin*, 407 F.2d at 180 (customer-suit exception analysis properly took into account the "balanc[e] of convenience of the parties and witnesses").

Courts have consistently severed claims against a manufacturer (the "true defendant") to facilitate the transfer of those claims to a more convenient venue. *See, e.g.*, *Toshiba Corp.*, 2005 WL 2415960, at *8; *LG Elecs.*, 126 F. Supp. 2d at

29

424. As all these courts recognized, it makes no sense to require the manufacturer to litigate claims against it in an inconvenient forum when the claims against the mere sellers of the accused products can and should be stayed.

Not only did the district court disregard the fact that the Western District of Washington is clearly a more convenient forum in which to try to claims against Nintendo, the district court considered its own perceived expertise in deciding patent cases a factor weighing against severance and transfer. The court stated that it is "especially true" that application of the customer-suit exception should be "tempered" "where the original court is one experienced in the trial of patent litigation and has developed case management techniques uniquely targeted to the efficient administration of patent litigation." A6. Thus, while completely disregarding fundamental principles of fairness and convenience to the parties, the district court erroneously put its thumb on the scale with a factor (its own experience) it believed supported retaining the case.

Because the court erroneously failed to consider fairness and the parties' convenience when ruling on the motion, the writ should be granted.

## CONCLUSION

Petitioners respectfully request that the Court grant this petition for a writ of mandamus, vacate the March 7, 2014 order, and remand with instructions to sever the case against Nintendo and transfer it to the Western District of Washington.

Dated: April 11, 2014               Respectfully submitted,

                                    COOLEY LLP

                                    By: _____
                                            Stephen R. Smith

                                    *Attorneys for Petitioner Nintendo of*
                                    *America Inc.*

                                    BAKER & MCKENZIE LLP

                                    By: _____
                                            Jay F. Utley

                                    *Attorneys for Petitioners Nintendo of*
                                    *America Inc., Micro Electronics, Inc.,*
                                    *Hastings Entertainment, Inc., GameStop*
                                    *Corp., Best Buy Stores, L.P., BestBuy.com,*
                                    *LLC, K Mart Corporation, Target*
                                    *Corporation, and Toys "R" US-Delaware,*
                                    *Inc.*

# CERTIFICATE OF SERVICE

United States Court of Appeals
for the Federal Circuit

Misc. No. _____

-------------------------------------------------------------)

IN RE NINTENDO OF AMERICA INC.,
MICRO ELECTRONICS, INC., HASTINGS
ENTERTAINMENT, INC., GAMESTOP CORP.,
BEST BUY STORES, L.P., BESTBUY.COM, LLC,
KMART CORPORATION, TARGET CORPORATION,
AND TOYS "R" US-DELAWARE, INC.,

                              *Petitioners*.

-------------------------------------------------------------)

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by Cooley, LLP, attorneys for Petitioners to print this document. I am an employee of Counsel Press.

On the **11th Day of April, 2014**, I served the within **Petition for Writ of Mandamus** upon:

| Counsel | Party Represented |
|---|---|
| **Brian Christopher Banner**<br>King & Spalding LLP<br>401 Congress Avenue, Suite 3200<br>Austin, TX 78701<br>512-457-2000<br>512-457-2100 (fax)<br>bbanner@kslaw.com<br><br>**Sanjeet Kumar Dutta**<br>Steptoe & Johnson LLP<br>1001 Page Mill Road<br>Building 4, Sute 150<br>Palo Alto, CA 94304<br>650-687-9500<br>650-687-9499 (fax)<br>sdutta@steptoe.com | ACCO Brands Corporation |

| Counsel | Party Represented |
|---|---|
| **Ravinder Singh Deol** | ACCO Brands Corporation |
| **Jennifer Klein Ayers** | Accell Corporation |
| **Steven G. Schortgen** | DisplayLink Corp. |
| K&L Gates LLP | Hewlett Packard Company |
| 1717 Main Street, Ste 2800 | IOGear, Inc. |
| Dallas, TX 75201 | LeanCode L.L.C. d/b/a Plugable |
| 214-939-5976 | Technologies |
| 214-939-5849 (fax) | LeanCode LLC |
| ravi.deol@klgates.com | SIIG, Inc. |
| jennifer.ayers@klgates.com | Sewell Development Corporation |
| steve.schortgen@klgates.com | Sewell Development Corporation |
| | d/b/a Sewell Direct |
| | StarTech.com USA L.L.P. |
| | Targus, Inc. |
| | Trippe Manufacturing Co. |
| | Lenovo (Unied States) Inc. |
| | 1009 Think Place |
| | Morrisville, NC 27560 |
| | Diamond Multimedia, Inc. |
| | 9650 DeSoto Ave |
| | Chatsworth, Ca 91311 |
| **Dan Duncan Davison** | Amazon.com, LLC |
| Fulbright & Jaworski | |
| 2200 Ross Avenue | |
| Suite 2800 | |
| Dallas, TX 75201 | |
| 214/855-8000 | |
| 12148558200 (fax) | |
| dan.davison@nortonrosefulbright.com | |
| **Debra Elaine Gunter** | Amazon.com, LLC |
| Yarbrough Wilcox, PLLC | Best Buy Stores, L.P. |
| 100 E. Ferguson Street | BestBuy.com, LLC |
| Ste 1015 | Game Stop Corporation |
| Tyler, TX 75702 | Hastings Entertainment, Inc. |
| 903-595-3111 | K mart Corporation |
| debby@yw-lawfirm.com | Micro Electronics, Inc. |
| | Target Corporation |
| | Toys "R" Us-Delaware, Inc. |
| | Nintendo of America, Inc. |

| Counsel | Party Represented |
|---|---|
| **Jay Forrest Utley**<br>Baker & McKenzie<br>2001 Ross Ave<br>Suite 2300<br>Dallas, TX 75201<br>214/978-3036<br>12149783099 (fax)<br>jay.utley@bakermckenzie.com | Amazon.com, LLC<br>Best Buy Stores, L.P.<br>BestBuy.com, LLC<br>Game Stop Corporation<br>Hastings Entertainment, Inc.<br>K mart Corporation<br>Micro Electronics, Inc.<br>Target Corporation<br>Toys "R" Us-Delaware, Inc.<br>Wal-Mart Stores Texas, LLC<br>Wal-Mart Stores, Inc.<br>Nintendo of America, Inc.<br>Amazon.com, Inc.<br>Nintendo Co., Ltd. |
| **Daniel Joseph O'Connor**<br>**Omar Dawood Galaria**<br>Baker & McKenzie<br>300 E Randolph Drive<br>Chicago, IL 60601<br>312.861.2790<br>312.698.2325 (fax)<br>daniel.oconnor@bakermckenzie.com<br>omar.galaria@bakermckenzie.com | Amazon.com, LLC<br>Best Buy Stores, L.P.<br>BestBuy.com, LLC<br>Hastings Entertainment, Inc.<br>K mart Corporation<br>Micro Electronics, Inc.<br>Target Corporation<br>Toys "R" Us-Delaware, Inc.<br>Nintendo of America, Inc.<br>Amazon.com, Inc.<br>Nintendo Co., Ltd. |
| **Stefani E Shanberg**<br>Wilson Sonsini Goodrich & Rosati PC<br>650 Page Mill Rd<br>Palo Alto, CA 94304-1050<br>650-565-3645<br>650-493-6811 (fax)<br>sshanberg@wsgr.com | DisplayLink Corp. |

| Counsel | Party Represented |
|---|---|
| **Herbert A Yarbrough, III**<br>Attorney at Law<br>100 E Ferguson<br>Suite 1015<br>Tyler, TX 75702<br>903/595-3111<br>19035950191 (fax)<br>trey@yw-lawfirm.com | Nintendo of America, Inc.<br>Amazon.com, LLC<br>Best Buy Stores, L.P.<br>BestBuy.com, LLC<br>Game Stop Corporation<br>Hastings Entertainment, Inc.<br>K mart Corporation<br>Micro Electronics, Inc.<br>Target Corporation<br>Toys "R" Us-Delaware, Inc. |
| **James Ellis Davis**<br>Ferguson, Braswell & Fraser, PC<br>2500 Dallas Parkway, Suite 260<br>Plano, TX 75093<br>972-378-9111<br>972-378-9115 (fax)<br>jdavis@dallasbusinesslaw.com<br><br>**Carl R Roth**<br>**Brendan Clay Roth**<br>**Amanda Aline Abraham**<br>The Roth Law Firm<br>115 N. Wellington, Suite 200<br>P.O. Box 876<br>Marshall, TX 75671-0876<br>903-935-1665<br>903-935-1797 (fax)<br>cr@rothfirm.com<br>br@rothfirm.com<br>aa@rothfirm.com<br><br>**Kelly James Kubasta**<br>**Casey Lee Griffith**<br>Klemchuk Kubasta, LLP<br>Campbell Centre II,10th Floor<br>8150 North Central Expressway<br>Dallas, TX 75206<br>214/367-6000<br>214/764-6673 (fax)<br>kelly.kubasta@kk-llp.com<br>casey.griffith@kk-llp.com | Secure Axcess, LLC |

| Counsel | Party Represented |
|---|---|
| **Michael Charles Smith**<br>Siebman Burg Phillips & Smith, LLP<br>P O Box 1556<br>Marshall, TX 75671-1556<br>903-938-8900<br>19727674620 (fax)<br>michaelsmith@siebman.com<br><br>**Rachelle H Thompson**<br>McGuireWoods LLP - Raleigh<br>434 Fayetteville Street, Suite 2600<br>Raleigh, NC 27611<br>919.755.6572<br>919.755.6591 (fax)<br>rthompson@mcguirewoods.com | Wal-Mart Stores Texas, LLC<br>Wal-Mart Stores, Inc. |

**via Express Mail and E-Mail,** by causing 2 true copies of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Additional, a copy will be sent to these U.S. District Judges:

> HON. RODNEY GILSTRAP, JUDGE
> U.S. DISTRICT COURT FOR THE
> EASTERN DISTRICT OF TEXAS
> Sam B. Hall, Jr. Federal Building
> and United States Courthouse
> 100 East Houston Street
> Marshall, Texas 75670
> PHONE: (903) 935-3868
> FAX: (903) 935-2295

**via Express Mail,** by causing 2 true copies of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Unless otherwise noted, 4 copies and a pdf copy on disk, along with the required filing fee, have been hand-delivered to the Court on the same date as above.

April 11, 2014

_____
John C. Kruesi, Jr.
Counsel Press